KATHERINE M. SHEPHERD, APPELLEE, v. LINCOLN TRACTION COMPANY, APPELLANT.

FILED OCTOBER 16, 1907. No. 15,239.

1. Evidence: COLLATERAL FACTS. Where there is a direct conflict in the evidence of the witnesses relating to a material issue in the case, any collateral fact or circumstance tending in any reasonable degree to establish the probability or improbability of the fact in issue is relevant evidence and proper for the consideration of the jury.

2. Appeal: EVIDENCE: INSTRUCTIONS. A judgment will not be reversed where the evidence relating to the amount of damages is conflicting, and where the rule of damages to be allowed is submitted to the jury under proper instructions.

APPEAL from the district court for Lancaster county: ALBERT J. CORNISH, JUDGE. *Affirmed.*

*Clark & Allen,* for appellant.

*John M. Stewart* and *H. F. Rose, contra.*

DUFFIE, C.

In her petition, the plaintiff alleges that she was a passenger on one of the cars of the defendant company, which she desired to leave upon reaching Twenty-Eighth street; that she notified and properly signaled the motorman, who was in sole charge of the car, to halt the car for that purpose; that the motorman slackened the speed, stopped

the car, and while the plaintiff was in the act of alighting from the same, without negligence on her part, and so known to the defendant's said servant to be so alighting, he so negligently and unskillfully controlled and managed said car and its brake and motive power and machinery that, without notice or warning to plaintiff, said car was negligently, suddenly and violently jerked and started forward along said railroad, thereby violently throwing plaintiff against said car and upon the brick pavement. The answer was, first, a general denial, and, second, contributory negligence on the part of the plaintiff, in that while the car was in motion, and before it reached the intersection of Twenty-Eighth and O streets, the plaintiff carelessly and negligently left her seat and stood on the footboard of the car; that before the car stopped, and before it reached the crossing on said street, she carelessly and negligently alighted from the car and stepped down upon the street, without taking precaution to avoid falling; that, by reason of her negligence and carelessness in standing on the footboard and alighting from a moving car, she fell upon the pavement, and that the injuries complained of, if any were received, were solely the result of her own carelessness and negligence in so alighting.

It will be observed that the material issue upon the trial was whether the car upon which the plaintiff was riding had come to a full stop before she attempted to alight therefrom, or whether the plaintiff attempted to alight from the car while it was in motion and before it was brought to a full halt. The plaintiff and two of her witnesses testified that the car had been brought to a full stop when she stepped upon the footboard and before she attempted to leave the same; while the motorman and two of defendant's witnesses, passengers upon the car at the time, testified that the car was in motion when the plaintiff alighted therefrom. It developed from the evidence given on the trial that the night upon which the accident occurred was quite dark; that there was no light at the

intersection of Twenty-Eighth and O streets; that there was no conductor upon the car, and that the motorman in charge was inexperienced, having had charge of the car for a week or ten days only, his services prior to that time being under the direction of another motorman who was instructing him in the management and conduct of a car. In this condition of the record, the defendant asked instructions numbered 4 and 5 in the following language: "(4) The plaintiff does not allege in her petition that the defendant employed an unskilled motorman, and you will not consider this issue in determining whether defendant was negligent. (5) You are instructed that the absence of a conductor is not an issue in this case. The plaintiff does not charge in her petition that the defendant was negligent in operating its car without a conductor, and you will not consider this question in determining whether the defendant was negligent." The court modified these instructions so that, as given to the jury as numbers 13 and 14 of its charge, they read as follows: "(13) The plaintiff does not allege in her petition that the defendant employed an inexperienced motorman. A failure to employ an experienced motorman is not alleged as a ground of negligence and recovery therefor. Evidence bearing upon this question is to be considered by you only as it bears upon the question whether the defendant was guilty of the negligence alleged in plaintiff's petition. (14) The plaintiff does not allege in her petition that the absence of a conductor on the car constituted negligence on the part of the defendant, and such absence is not an issue in the case, and is to be considered by you only as it may bear upon the question whether the defendant was guilty of negligence as alleged in the petition, or the plaintiff was guilty of contributory negligence as alleged in the answer." Exceptions were taken to the refusal of the court to give the instructions in the language asked by the defendant, and, also, to the giving of the instructions as modified by the court, and it is now urged that, as the only material point in issue between the par-

ties was whether the car had been brought to a full stop before the plaintiff attempted to alight therefrom, whether the motorman was experienced in the duties of his position or otherwise was wholly immaterial, as was also the question of the presence or absence of a conductor on the car.

The effect of these two instructions, as given by the court is to tell the jury that they may, in reaching a verdict, consider the experience of the motorman in handling cars of the kind, as well, also, as the absence of a conductor from the car when the accident occurred. Whether a car is at rest or in motion at a certain time is a matter of observation on the part of those who are passengers or onlookers, and our first impression was that the question was one which should be determined from the evidence of those who saw and observed the conditions at the time. If there was no conflict in the evidence of the several witnesses of the occurrence, then collateral facts which did not go directly to the issue involved would hardly be competent either to support or contradict such direct testimony; but in this case there was a sharp conflict in the evidence, witnesses on one side testifying that the car had come to a full stop prior to the plaintiff's attempt to alight, and others testifying with equal certainty that the car was then in motion. In this condition of the case, it was left to the jury to say which set of witnesses they would believe, or whose testimony was more likely to be correct, and any collateral fact that would throw light upon this subject was proper for the consideration of the jury. In 1 Elliott, Evidence, sec. 144, it is said: "As a general proposition, therefore, it may be said that any evidence that tends in any reasonable degree to establish the probability or improbability of a fact in issue, no matter how slight its weight may be, is relevant. * * * It is not necessary, however, that it should in itself bear directly upon the point in issue, for if it is but a link in the chain of evidence tending to prove the issue by reasonable inference, it may nevertheless be relevant. Indeed, evidence which tends to make the testimony of witnesses

probable or improbable may sometimes be competent." In
*Platner v. Platner,* 78 N. Y. 90, it is said: "Whatever
evidence is offered which will assist in knowing which
party speaks the truth of the issues in an action is rele-
vant; and, when to admit it does not override other formal
rules of evidence, it should be received." *Whitney v. In-
habitants of Leominster,* 136 Mass. 25, was an action
brought against the town for injuries occasioned by an
alleged defect in the highway. It was in controversy
whether the plaintiff was in the exercise of due care when
the accident occurred; there being evidence tending to
show that he was driving at a high rate of speed, one wit-
ness estimating it at 15 miles an hour. As tending to show
the capacity of the plaintiff's horse for speed, and as bear-
ing upon the probability of the testimony as to his actual
speed at the time of the accident, the defendant was per-
mitted to show that the horse had been driven on a race
course at the rate of a mile in three minutes, and the evi-
dence was held competent and relevant. It is natural,
therefore probable, that an inexperienced motorman would
be more likely to mismanage the car upon which the plain-
tiff was riding than one of much experience. His want of
acquaintance with the route and the crossings where stops
were to be made, especially on a dark night, would more
likely lead to his confusion and inability to handle the car
with the same degree of care as one of more experience.
So, also, the presence of a conductor, whose business it is
to direct the halting and starting of the car by signals
given the motorman, would tend greatly to increase the
probability of the car being handled in the careful manner
that would not otherwise obtain. This being so, these are
circumstances which the court might properly direct the
jury they were at liberty to consider in determining
whether the witnesses for the plaintiff or defendant were
most likely to be correct upon the question of whether the
car had been brought to a halt at the time plaintiff at-
tempted to alight therefrom, and had been suddenly
started while she was in the act of getting off. The prob-

ability that an inexperienced motorman, having no assistance from a conductor in the management of his car, would be likely to mismanage the same to the injury of some of the passengers is a circumstance which may properly be considered in support of those witnesses who testify to mismanagement, in opposition to those who testify that there was no mismanagement on the part of the motorman. Here was a conflict which the jury had to determine. Any fact or circumstance which would aid them in that duty was relevant to the issue and was for their consideration. Any circumstance which rendered more probable the fact testified to by one set of witnesses, when opposed to that of another set, is a relevant fact proper to be considered. See *Lincoln Vitrified P. & P. B. Co. v. Buckner*, 39 Neb. 83.

Relating to the damages, the amount was fixed by the jury under proper instructions. There was also a sharp conflict in the testimony of the witnesses relating to the degree of injury received by the plaintiff and as to its permanent character. These were matters for the jury to pass on under the instructions of the court, of which no complaint is made; and, under the general rule governing cases of this character, we cannot interfere with the finding.

There being no reversible error in the record, we recommend an affirmance of the judgment.

EPPERSON and GOOD, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.