RUDOLPH BLUM, APPELLANT, v. CLARENCE W. TRUELSEN ET
AL., APPELLEES.

287 N. W. 782

FILED OCTOBER 6, 1939. No. 30623.

*Paul I. Manhart* and *M. J. Buckley,* for appellant.

*William R. Patrick, contra.*

Heard before SIMMONS, C. J., EBERLY, PAINE, CARTER,
MESSMORE and JOHNSEN, JJ.

PAINE, J.

Plaintiff brought action on a promissory note in the
amount of $1,150, dated March 15, 1931, made payable six
months after date to the German-American State Bank of
Chalco, Nebraska, and signed by Clarence W. Truelsen,
defendant, and his father, Henry T. Truelsen. After 20
hours of deliberation, the jury returned a verdict against
Clarence W. Truelsen only for $874, on which verdict the
trial judge entered judgment and dismissed the action as to
the father, Henry T. Truelsen.

The pleadings in this case are very voluminous, the plain-
tiff having filed an original petition and four amended peti-
tions. The defendants filed separate answers.

It is alleged as a defense by Clarence W. Truelsen that
the plaintiff, the cashier of said bank, with knowledge of its
impending failure, and to avoid personal loss as a depositor
therein, resorted to the "fraudulent scheme" of selling the
note to himself, without the knowledge or consent of the
directors, and that he did not disclose his claim of owner-
ship of said note for some years after he purchased it and
until the commencement of this action; that the board of

directors never authorized, consented to, or knew of the transaction.

The evidence discloses that this was a renewal note of Clarence W. Truelsen, and that it was given for six months at 8 per cent. interest. After the father's signature had been placed thereon, and on July 13, 1931, the plaintiff, being the cashier of the bank, figured up the interest due on the note and purchased the note of his own bank, charging his personal checking account in said bank, and entering a credit to the bank of $1,180.42, being in full payment of the note, and indorsing on the back of the note the following: "Without recourse pay to the order of Rudolph Blum German-American State Bank By Rudolph Blum Cashier," and making the records of the bank indicate that the note had been paid by the makers on that day.

In exhibit No. 5 is a supplemental report to the chief examiner, signed by the board of directors, in which it is stated that the Clarence W. Truelsen note has been paid. The evidence thus discloses that the bank received full payment for the note on the day the cashier purchased it, and therefore did not lose anything by the transaction.

"A director or officer may engage in business transactions with or through his bank if such transactions are entirely free of fraud, bad faith, or undue advantage and are not forbidden by by-law or statute." 9 C. J. S. 241, sec. 121.

This action is not a direct action by the bank, nor by the receiver of the bank, attacking the purchase of the note by its cashier, but it is brought in here as a collateral issue by the maker of the note when he is attempting to avoid payment thereon.

In the opinion of the court, so far as the maker of the note is concerned, the cashier owned the note, having paid full value therefor, and he had a right to bring the action thereon.

Henry T. Truelsen, the father, alleged that, subsequent to the execution and delivery of the note to the bank by his son, the plaintiff, being cashier of said bank at that

time, induced the defendant, without the knowledge of his son, and without any consideration therefor, to sign said note.

Henry T. Truelsen testified that he had been induced to sign the note after its delivery to the bank, and that he received no consideration, and therefore had incurred no liability whatever by signing the note long after his son had delivered it to the bank.

In the instructions to the jury, the court properly instructed the jury in instruction No. 6, which reads as follows: "You are instructed that the defendant Henry T. Truelsen alleges in his amended answer that he signed said note after it was executed and delivered to the said bank by defendant Clarence W. Truelsen, without the knowledge of Clarence W. Truelsen, and without any consideration therefor, not as an accommodation party but as surety. The burden of proof is upon the defendant Henry T. Truelsen to establish said defense by a preponderance of the evidence and if you find he has established such defense then he would not be liable on said note and you should return a verdict in his favor."

The jury had one side light on the ability of the father to protect himself in banking matters, for the evidence disclosed that Henry T. Truelsen had $700 on deposit in the bank, and just before the bank failed he came in and borrowed $2,000, so that he could get his deposit in full by paying the difference between his deposit and the $2,000 he owed the bank, so he lost nothing as a depositor.

Upon the sharply conflicting testimony given by the plaintiff and Henry T. Truelsen and his son, the jury must have decided from this evidence that, when the son renewed his note, which had been running for many years, it was a completed transaction; that some time afterward, without the knowledge of the son, the father was induced by the cashier to put his name on it, without any consideration whatever. It was an open question whether the father signed that note without consideration, and it was submitted to the jury on the evidence, under proper instruc-

tions, and the jury found that the son alone was liable on the note. We think we are bound by that verdict.

The evidence discloses that the bank failed on October 30, 1931, and the only possible explanation for the action of the jury in returning a verdict for so much less than the face of the note was that the jury knew that other depositors lost approximately 24 per cent. of their deposits in the final liquidation of this bank. It was suggested in the argument that perhaps the jury deducted from the face of the note the amount which the plaintiff would have lost if, instead of purchasing the note of the bank, he had left this money on deposit in his bank until it failed. There appears no other possible explanation for the size of the verdict returned.

This court has held that, when the jury fail to add interest in the verdict returned, the court may make the proper computation and include the amount of the interest in the judgment, without any amendment of the verdict whatsoever. *Calnon v. Fidelity-Phenix Fire Ins. Co.*, 114 Neb. 194, 206 N. W. 765; *Swygert v. Platte Valley Public Power and Irrigation District*, 133 Neb. 194, 274 N. W. 492.

The verdict and judgment cannot be sustained on the evidence in the case, and are therefore reversed and the cause is remanded for further proceedings in harmony with this opinion.

REVERSED.